Good morning, Your Honors. Robert Powell on behalf of Mr. Djuric. There are three issues that we've raised in this case regarding the board's denial and order of removal. First, whether the board abused its discretion in denying asylum as a matter of discretion. Second, whether the board abused its discretion in denying withholding of removal. And third, whether the board in denying the 237 A1H waiver, a special waiver, committed a legal error by not applying the correct standard. I'd like to start with the issue about the discretionary denial of asylum. Could I ask you to address, in your argument, when it's convenient to do so, but it overlaps all the issues, I note that the immigration judge, in some detail, and the VIA, in lesser detail, but adopting the IJ as I read it, found that Mr. Djuric could relocate to a portion of Bosnia, which is essentially Serb-controlled. And so, if that were to be upheld, and if we, and I don't, you may not agree that, I'm not asking you to agree that that was a sustainable finding or that the proper burden of proof was applied, but assuming that relocation is a viable finding in this case, how does that impact any of your, any or all of your theories? The issue about the viability of relocation comes up with respect to the withholding decision in the board's decision. For withholding, and our argument is that the board had not properly followed the regulations in determining whether it was reasonable to relocate in this Serb-controlled area of Bosnia. HCFR section 1208.16b3 provides a list of factors that are to be considered in determining whether it's reasonable for, to require a person to relocate. There's a, and there's also a recent board decision that we cited in the 28J letter, the matter of MZMR, which just came out a couple weeks ago, which elaborates on what the board or an immigration judge should consider in determining this question about whether, under all circumstances, it's reasonable to require relocation. Does it affect the asylum analysis or the discretionary waiver? It's one factor that can be considered in the discretionary decision, but even if it is, with respect to the asylum application, even if it is reasonable for a person to relocate, that would not necessarily be a reason for the discretionary denial. It's one of the factors that can be considered. But let me just explain maybe, first of all, why we think this, the board's decision on the reasonableness of relocation is not correct. The board did not follow what's required to consider in the regulations. First of all, the board did not, in considering whether it's reasonable to require somebody to relocate, the regulation requires a consideration of all the factors, under whether, under all the circumstances, it's reasonable to require relocation. The board said nothing at all about the impact of relocation on Mr. Jurek's family members, the wife, his U.S. citizen wife and U.S. citizen children. The government, in its brief, argues that that does not have to be considered, that such consideration is not a factor in determining whether an applicant faces a clear probability of persecution and whether the relocation is reasonable. But it's clear the board did not consider that, and we think that's a legal error that the board, in determining the reasonableness of relocation, has to consider not only the impact on the individual, the person who's applying, but also on the family members. It was uncontested in this case that the family members, the family's not going to be broken up. If the family, if Mr. Jurek has to go back, his wife and children are going with him. If we agree with you on that point, is the proper solution a grant and remand to direct the board to consider these factors? Yes, I think that's a good point. So all you'll get is, in practical terms, realistically, the board recites the factors and may come to the same result. Well, it might or it might not. I mean, if somebody really thinks about it, looks at what's going to happen to the family. We get a different answer. I got it. In addition, the board failed to consider evidence in the record concerning whether it's really viable for Mr. Jurek to relocate. The regulations require consideration of any ongoing civil strife, requires a consideration of the administrative and economic infrastructure that's available there. There's much evidence in the record, UNHCR reports, for example, indicating that it's not really reasonable, given the economic situation in Srpska, to require people to return now at this late date. The government does point out, the board pointed out that, yeah, there were many people that did go back and relocate in Bosnia. Those returns happened mostly before the year 2003. The evidence in the record, which the board did not consider, is that there's an overcrowding or there are too many people that have come back into Bosnia for the system to handle. The economic infrastructure, the ability for people to work and support themselves is not there. There is ongoing civil conflict in the area, harassment and discrimination and so on. So, for those reasons, we think the board made an error in, by refused, by failing to consider that evidence that's in the record. With respect to asylum, I would point out, first of all, that there is, there should not be any doubt that Mr. Jurek is a refugee and eligible for consideration. The board certainly accepted that fact. So, the starting point in considering or in evaluating the board's discretionary decision should be the precedent decisions that have been issued regarding how a discretionary decision should be made with respect to an asylum claim, under what circumstances should an asylum be denied as a matter of discretion when the person is a refugee or has suffered past persecution. Before we get to that, and this is, I'm just asking for something that's, asking about something that's puzzled me, and I'm not yet talking about this case. Our standard order when we hold that someone is entitled to asylum, and when neither the IJ nor the BIA has said, well, in our discretion we won't give it to you, our standard order is we remand, we grant and remand to the Attorney General for the exercise of the Attorney General's discretion as to whether to grant asylum. Why, I mean, what's happening here? What happens in those cases where we, we might reverse the BIA and say, hey, you're wrong, entitled to asylum, and then is there a different standard when the Attorney General then decides to grant or to deny asylum? Because I've never seen another case that's come back up after we've held entitled to asylum Attorney General's discretion whether to grant or deny, yet here I'm being asked to decide whether or not it was the proper discretionary decision. Just help me understand the structure of what's going on. So what happens in general, when this court remands back to the agency, to the Attorney General for further consideration, to my knowledge, the cases are then considered on a case-by-case basis. I think many of the cases, once they're remanded, are granted, but I couldn't say that it's automatic as a matter of course. I've never in 13 years seen an appeal, or rather a petition for review, once we've said entitled to asylum, we remand for the exercise of discretion. I've never seen one of those come back. And I'm not aware of any either. Is it the same standard that's being applied? Well, yes, I mean, technically it is the same standard. It may be that the adjudicator, whoever's looking at the case when it comes back, looks at it with a more generous eye than had been looked at before, but I think legally it's the same standard that they applied. So in other words, in the situation Judge Fletcher's describing, which is my experience as well, if it went back after we've said, you know, the board erred on past persecution and so on and so forth, he's eligible for asylum, not just in this case, I'm just saying generically, they could still exercise discretion if the Attorney General concluded that relocation was an option. Well, I think they could still, as a legal matter, deny the application as a matter of discretion. I don't think they could properly deny it just by saying, well, relocation is possible and we're going to, it has to be considered. It should, you know, they have to support it, but it's still an option at that level. I think it's still legally possible for that to happen. All right, thanks. With respect to the asylum application, the starting point, as I said, of the precedent decisions that have been issued by the board and by this court and other circuit courts as well, describing what should be considered with respect to the discretionary denial. Here, an important point that the board relies on are the false statements and the failure to disclose information on the application for refugee status and the applications that were filed here in the United States. The matter of age, a precedent decision issued by the board in 1996 requires, well, in addition to the compelling humanitarian considerations, and furthermore, if the application is going to be denied based on the facts of the departure and entry, false statements made to get into the United States, if that's going to be a factor in the denial, then the totality of the circumstances of the alien in his or her flight from the home country have to be considered. And that, so the board in the exercise of discretion has to look not just at the fact that there were perhaps some false statements made to get a passport or in a refugee application, but consider the whole facts and circumstances, totality of facts and circumstances. That was not done here. Well, it kind of wasn't. The board's decision is somewhat opaque. I will certainly grant you that. And we find on page three some discussion of, general discussion. And then when we get to page five, the second full paragraph, when the board is saying, okay, we uphold the denial of asylum in the exercise of discretion and talks about dishonest behavior, there's a word that leads that paragraph, likewise, which, if I construe generously, the BIA's decision, I think it's incorporating some of the discussion that we've had earlier. I think that may be what's going on. So, in particular, refers back to a couple pages earlier when the board talks about various factors they're going to consider in the exercise of discretion. Even there, there's no discussion at all of the facts and circumstances facing Mr. Jurek and his family when they were living in this little enclave in Srpska. In particular, the fact that, well, in the first place, that they had been ethnically cleansed out of the area that their hometown, the fact that the border there is very porous, that they're in one location, it's not a permanent location, they're being told that they've got to get out of the house that they've been staying in, the fact that- Eventually, it turns out they never evicted from it, but it's a perch. They had left, yeah, right. Yeah. They were not able to support themselves in that area. They had to constantly cross the border into Serbia, into Loznica, to find work, to get enough, you know, just the bare necessities for surviving. The fact that he had been recognized in Serbia as a refugee. He had a refugee card. He had been recognized as a refugee already. And so the fact, you know, the circumstances in which he's living and which he's facing, there's none of that that's considered, which is inconsistent with the case law. When you're making this negative discretionary determination, you've got to look at the circumstances, say, refugee perspective, the individual's perspective. What's he living in? What are he and his family facing? And none of that is discussed in the decision. Now, this is now the same question, but now addressed to a different argument or different proposition. If we were to agree with you, would the remedy simply to send it back to the BIA for further discussion and make it clear that they are considering the things that they must consider? Well, I think this court can remand it with an instruction that the application be approved. That was done in the Mamouzian case, a decision from this court in 2004. I think this court certainly has the authority, the ability to do that. If it finds the record is clear and convincing enough that it would be an abuse of discretion to deny based on the record that exists. I have three seconds left. If you'd want to reserve a couple minutes by waiving the clock. I don't want to hear from the government, and we'll make sure you get enough chance to respond. Thank you. May it please the court. Jennifer Corey on behalf of Attorney General Eric Holder. As opposing counsel said, there are three issues before this court. In this appeal, two of them have to do with the discretionary denials of relief. And one having to do with the denial of withholding of removal. As an initial point, I just want to say that, especially because two of these denials were discretionary, that petitioner has conceded to willfully and materially misrepresenting personal facts to the U.S. government. And he has done so on five occasions. And that is a part of, that is a part of their discretionary decisions that we haven't really gotten to talking about. It's, as far as the discretionary denial of asylum is concerned, relocation was not, it, they never even got to that. The board never even got to that. Because they denied it as a discretionary decision. So, relocation only has to do with withholding of removal. And, sorry, let me collect myself a little bit. Well, here's the, here's the question to focus, help focus. There is discussion of relocation in the board's decision. And the IJ's decision does go through in some detail. Whether it's adequate or not, does talk about the ability to relocate, including mentioning that finding it's a stable region with an established administrative and economic infrastructure. The entire country remains somewhat economically depressed following the Civil War. And the record clearly establishes that Jurek's relocation to Sepak, their client Sepak, would be both safe and reasonable. And appears to talk about his family there. And no evidence that the family, at least the family that's there. So, if the relocation option is, as I said, a viable option. Is that something that, you're saying we can only consider it now in the withholding of removal context. If we found that there was a flaw in the exercise of discretion, then we would have to send it back for, as Judge Fletcher has mentioned, for the board to more adequately address the relocation option? Relocation was a part of the discretionary decision for asylum. I'm saying as far as like a statutory eligibility is concerned, it actually, it only went to withholding of removal. All of those factors, every single factor that relocation, family, all of those factors have to do with a discretionary denial of asylum. And the board did analyze that with, it did analyze relocation in terms of, explicitly in terms of withholding of removal. The fact that it didn't repeat that within the asylum context, and it didn't repeat a lot of the discretionary factors within the asylum context, does not mean that it wasn't, it wasn't taken into context with the asylum discretionary denial. It would just be repeating itself over and over again. Because there are a number, even though they were not appealed to this court, there were a number of discretionary reliefs that the board did discuss. And that were another, another cancellation of removal, for instance. So the discretionary factors were discussed over and over again. So relocation, yes, would be part of the discretionary denial of asylum. But they never got to discussing it as far as statutory eligibility was concerned, because, in that context, because they described it, just denied it outright as a discretionary decision. And. So let me just sharpen one question then. If we felt that the board had over-weighted the fraudulent misrepresentation, since they didn't adopt, expressly didn't adopt the adverse credibility finding of the immigration judge, and therefore if we assume that his involvement in Srebrenica isn't something we should be looking at him more as just a regular refugee from Serbia or Bosnia, and that, in that context, giving such overwhelming weight to the misstatements in his applications, then one would, in that context, if that were the case, are you saying that, well, we can say it's harmless error because they would find in any event that he could relocate? Or you're saying in that situation, we would have to send it back because the board would have to take another look in light of the record as it's been approved by us? I would say that you could find that it's harmless error because as was shown in the withholding of removal context, not only does he have to show past persecution, but he would, and if he did, as he has shown past persecution, as the board did find, then the burden shifted to the government. So as far to show that he could safely and reasonably relocate. Since they showed that in the context of withholding the removal, that would also apply to the, in the context of asylum. Therefore, it's harmless error. He can't show statutory eligibility for asylum, although the board never, in fact, got there. But I would also. And is it the same standard for relocation if we're talking asylum and withholding? Yes, Your Honor. Yeah. I would also say, and the IJ and the board in agreeing with the IJ and on their own account, this is not just some regular refugee. He was never a refugee from Bosnia to begin with. He never left Bosnia, and that is one of the material and willful misrepresentations that he stated over and over to the government. And he did so, as he said, expressly to get refugee status. However, he lived in Bosnia, in Sipak, Bosnia, for six years without incident. His parents, after they were no longer given, no longer had a house, just as Mr. DeJurek said would happen to him, him being evicted from his house, the government then helped them get housing there. He has in-laws there, and he lived there for six years without a problem. So he was never a refugee. It was purely for reasons of coming here. He was not fleeing any sort of persecution. He had, albeit already fled persecution in Zeneca, but he had found a safe place to relocate. And that, again, goes, so for withholding of removal, it's kind of bifurcated into two claims, one being that he was ethnically persecuted. And to that part of the claim, the government fulfilled its burden in showing that although he had shown past persecution because he was, he had to flee his hometown of Zeneca, he then could, he then reasonably relocated. It's not even a speculation that he could reasonably relocate, he already did so. And as far as. Remind me, how long has he been in the United States? Since 1998. And do we look at reasonable relocation, as the case now comes to us, reasonable relocation now, the reasonability of such location now. Yes. Not the reasonability of such relocation during that six-year period. No, you look at the reasonable relocation now. Right. And what happened in those six years may be relevant to that determination, but. Correct, Your Honor. And as far as the country conditions report show, it only shows that it's actually gotten better, that the situation has actually gotten better since Mr. Djuric left, left Bosnia. And I mean, to that end, in fact, like, I mean, as I said before, his family has been living there without, without any sort of issue. And the place in which he lived is majority Serb. And therefore, he would not face ethnic, ethnic persecution there. I think the second part of his claim for withholding was that he would face persecution on account of him being perceived as wealthy. But to that end, the burden is still on him. Is part of the reasonability determination how hard it might be on his American citizen children, for example? Is that, is that part of that determination? I understand that there's fairly good evidence that they would be safe. Correct. But if we've got children who are raised in, I think we're talking Kennewick. I think they speak English. Right. And maybe not any other language very well. Right. Well, I think that that's where opposing counsel is, is, is mostly incorrect in his analysis is that that is taken into consideration. His family, his U.S. citizen children and his wife are taken into consideration in the context of cancellation of removal. No, but I'm, I'm asking whether or not if we're talking reasonableness or relocation. Because that, those criteria are not limited to safety. It's, can safely and reasonably relocate. Yes, correct. And, but as far as the factors that are listed in the federal regulation ACFR 1208, it's family ties there are, should be taken into consideration. And that too, of course. But not, not the effect on a U.S., as far as I can tell and have read, not the effect on U.S. citizen children or spouses. Well, no, so I'm trying to understand. So we don't have a cancellation of removal action before us. Are you saying that if we were to uphold the government in this, at this stage, that he could then move for cancellation and invoke the hardship on his children? No, Your Honor. He already, he applied for cancellation and was denied it. And that was not appealed to this court. I see. Okay. And seeing, and they found that he did not, oh, that actually was another discretionary denial. No, that's not revealable by us. Right. Correct. I'm, as far as, they have family there too. And as far as a reasonable relocation of his children, he has one child who was born in the U.S. and one child who is, I believe, of some, of about 10 years old, I believe, when they moved here. I think this was the child who was eight months old when they were originally driven from their home. In Zeneca. Correct. And the only thing that they cited as a hardship in case of that, in that case, is mostly that the, especially the second child, doesn't know the language very well. So, as far as reasonableness is concerned and the balancing test that's been given here, and the fact that he has in-laws and his own parents there, and that he lived there for six years prior, I would say that that would balance out, balance out to show that it's reasonable and that he can reasonably and safely relocate within Bosnia. And then, finally, to the discretionary denial of the 237 A1HI waiver, opposing counsel has stated that they applied an incorrect standard and that they could not take Mr. Jiduric's fraud into consideration in discretionarily denying the waiver of inadmissibility. As of 1994, or sorry, 1996, INSV Yang, a Supreme Court case, made clear that the attorney, that the attorney general may take fraud into consideration. And that's exactly what the board did here, and they applied the correct standard in denying that. So, as far, there's no abuse of discretion in denying his asylum application. They applied the correct legal standard for the waiver of inadmissibility and substantial evidence supports their decision as far as withholding removal is concerned. Okay. Thank you very much. Mr. Powell, would you like, let's start with two minutes, but we'll make sure you get a chance to say what you need to say. Thank you. I just did want to make three points quickly. First of all, a question about whether the court should look to the immigration judge's decision to buttress the board's decision. I think not. The, you know, the rule is that if the board incorporates the immigration judge's decision, then those aspects can be considered by the Court of Appeals in reviewing. But the board in this case, from the very beginning, said that it's reviewing these decisions de novo. And the very first or second paragraph indicates that, well, with respect to the issues that are at play here, it's going to review those decisions, the decision of the immigration judge de novo, and make its own decision in the case. But de novo doesn't mean in a vacuum. I mean, it's clear from the way the board wrote its decision that although it wasn't adopting, per se, the decision of the immigration judge, clearly it was written within the context and confines of that decision. That's correct. But I think when the court evaluates the board's decision, it should look at what the board says it's considering. And it's not incorporating, you know, parts of the immigration judge's decision. Those really aren't parts that this court needs to or should look at. But a second point, with respect to the reasonableness of relocation and whether the impact on family members, the children, wife and children, should be considered. I think that's clear under the regulations that that is part of what has to be considered in considering the reasonableness. To the extent that the board and the government maintains that that is not a factor to be considered, we would ask this court to clarify that and hold that the impact on the family members also have to be considered in making that reasonableness determination. And then the third point I wanted to make is, as I said before, this court has previously remanded to the board with instructions to approve an asylum application, a Mimouzian case. Also relevant is a case called Knezovic, which I think is very close to this case, a family that had been ethnically cleansed out of Bosnia. And the court in this case held that it would be unreasonable to require that family to relocate in Bosnia, even though there may have been some areas where relocation might have been theoretically possible. But a family who's been ethnically cleansed from Bosnia, it's not reasonable to force them to return because they had no home, no business, no possessions and no place to go. And the quality of life in Bosnia would be abysmal for them. Thank you very much. Thank you very much. Thank you both sides for your arguments. Jurek v. Holder is now submitted for decision.
judges: Dearie, Fletcher, Fisher